IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| REGINA ZIRLOTT, as Personal Representative of the Estate of RICHARD MATTHEW ZIRLOTT, deceased; REGINA ZIRLOTT, in her individual capacity and REGINA ZIRLOTT, as dependent spouse of RICHARD MATTHEW ZIRLOTT, | *<br>*<br>*<br>*<br>* | CIVIL ACTION NO.:<br>CV-19-218 |
| Plaintiff, | * | |
| v. | * | |
| DISCOUNTRAMPS.COM, LLC, HD RAMPS, LLC, a subsidiary of DiscountRamps.com, LLC; METALS USA PLATES AND SHAPES, INC., SOUTHERN GAS AND SUPPLY, INC.; CYPRESS EMPLOYMENT, | *<br>*<br>*<br>* | |
| Defendants. | | |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendants DiscountRamps.com, LLC and HD Ramps, LLC give notice of their removal of this action from the Mobile County Circuit Court to the United States District Court for the Southern District of Alabama, Southern Division. In support of this Notice, defendants show the Court the following:

**A.   This Notice of Removal is timely**

1. On or about April 2, 2019, there was filed in the Mobile County Circuit Court a civil action, bearing the caption showing above and assigned by that Court

case number 02-CV-2019-900917.00. These defendants were served on or after April 16, 2019, accordingly, this removal is filed within 30 days of service of these defendants. These defendants have not filed any pleading or other appearance in the Circuit Court.

**B.    The Action is Removable Based Upon Diversity of Jurisdiction**

**I.    There is Diversity of Citizenship**

2. The action is removable because this Court would have original jurisdiction under 28 U.S.C. § 1332 and no proper defendant is a citizen of Alabama.

3. According to paragraph 1 of the Complaint, Plaintiff is a resident citizen of the State of Alabama. In addition to the named defendants discussed below, the Complaint identifies certain fictitious defendants. However, for purposes of removal, the citizenship of such defendants "shall be disregarded." 28 U.S.C. § 1441(b)(1).

4. Defendant DiscountRamps.com, LLC ("DiscountRamps.com") and defendant HD Ramps, LLC ("HDR"), are limited liability companies organized under the laws of the state of Wisconsin with their principal places of business in Wisconsin. There is a single member of both companies - DRC Holdings, Inc. DRC Holdings, Inc. is a Delaware corporation with its principal place of business in Wisconsin. Accordingly, for purposes of diversity jurisdiction and removal, DiscountRamps.com and HDR are not citizens of Alabama.

5. Defendant Southern Gas and Supply, Inc. ("SGS"), is an Alabama corporation, which would ordinarily defeat diversity jurisdiction. However, SGS is,

within the jargon of removal jurisdiction, a "fraudulently joined" defendant because under Alabama law, which applies to each of the counts asserted against SGS in the Complaint, there is no basis for Plaintiff's recovery against SGS.

6. In <u>Pacheco de Perez v. AT&T Co.</u>, 139 F. 3d 1368, 1380 (11th Cir. 1998), the Court set out an often-cited guideline for measuring fraudulent joinder assertions: "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.  In making its determination, the District Court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor."

7. All of the claims asserted against SGS in the Complaint derive from Plaintiff's allegation that Richard Matthew Zirlott ("Mr. Zirlott") suffered injuries caused by the failure of a 60" EZ Deck Step Rub Rail Portable Ladder Mr. Zirlott was purportedly using while working at the premises of defendant Metals USA Plates and Shapes, Inc. ("Metals USA") on December 18, 2018.  The Complaint alleges that defendant Metals USA purchased the ladder at issue from SGS.

8. ALA. CODE § 6-5-521(a) defines the term "product liability action" as "any action brought by a natural person for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence,

(2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine, (4) the Alabama extended manufacturer's liability doctrine as it exists or is hereafter construed or modified, (5) breach of any implied warranty, or (6) breach of any oral express warranty and no other."

9. Plaintiff's Complaint contains six counts, but only Counts I through IV are asserted against SGS. Each one of the counts against SGS fall within one of the categories described in ALA. CODE § 6-5-521 as a "product liability action."

10. ALA. CODE § 6-5-521(b) provides that a distributor, wholesaler, dealer, retailer, or seller of a product cannot be a defendant in a product liability action in Alabama unless (1) it is also the manufacturer or assembler; (2) it exercised substantial control over the design, testing, manufacture, packaging or labeling of the product; or (3) it altered or modified the product.

11. In the Declaration of Kevin Kennedy, Vice President of SGS, which is attached hereto as Exhibit A and incorporated herein by reference, Mr. Kennedy expressly addresses each of these exceptions to the ALA. CODE § 6-5-521 immunity, and disclaims each circumstance under which SGS might fit into one of them. Specifically, Mr. Kennedy's Declaration establishes that the ladder at issue came to SGS prepackaged, and SGS had nothing whatsoever to do with the design, manufacture, or testing of the ladder. Furthermore, SGS did not alter or modify the ladder or its packaging in any way, and delivered the ladder to Metals USA still in its original, sealed packaging.

12. The Kevin Kennedy Declaration clearly negates any possibility that SGS could be held liable under any of the counts asserted against it by Plaintiff, as the Alabama Legislature has made clear that, with certain specific exceptions not applicable here, persons or entities in the position of SGS are immune from litigation ("no product liability action may be asserted . . . ."). Thus, the only possible conclusion is that SGS is fraudulently joined in Counts I through IV of the Complaint. See Legg v. Wyeth, 428 F. 3d 1317, 1321-23 (11th Cir. 2005).

13. Defendant Cypress Employment Services, Inc. ("Cypress") is an Alabama corporation which likewise has been fraudulently joined. Count VI of the Complaint asserts a claim against Cypress for Outrage, based on the allegations that Cypress failed to (1) inform Plaintiff that Mr. Zirlott had been taken to the hospital, (2) inform her that his injuries were life-threatening injuries, and (3) inform the hospital of Mr. Zirlott's real name.

14. The Alabama Supreme Court has described a claim for outrage as an "extremely limited cause of action," "so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." Potts v. Hayes, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted). To recover under the tort of outrage under Alabama law, "a plaintiff must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Green Tree

Acceptance, Inc. v. Standridge, 565 So. 2d 38, 44 (Ala. 1990). Although the Court has recently noted that the tort of outrage may be viable outside the context of the three circumstances listed above, it made clear "that the tort of outrage is viable only when the conduct is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" Little v. Robinson, 72 So. 3d 1168, 1173 (Ala. 2011) (internal citations omitted).

15. In the fraudulent joinder context, the issue to be decided is whether Cypress's alleged actions and conduct fell outside all bounds of decency, and are regarded as atrocious and utterly intolerable to a civilized society. See Harris v. ACCC Ins. Co., 2016 WL 6986637, at *5 (M.D. Ala. Nov. 28, 2016). "Whether a fact pattern attains this rarefied level is a question of law for determination by the court." Smith v. Comcast Corp., 2018 WL 3468371, at * 7 (S.D. Ala. July 17, 2018). In Holloway v. Oxygen Media, LLC, the Northern District of Alabama recently provided the following examples of circumstances "that could *not* support an outrage claim" to demonstrate "the substantially heavy burden in showing that conduct is 'extreme and outrageous' under Alabama law:"

> a law enforcement officer coerced a prisoner into waiving her rights, lied that her attorney abandoned her, and threatened her with "sizzling" and "frying" in the electric chair, Tinker v. Beasley, 429 F.3d 1324, 1330-31 (11th Cir. 2005); a city council member said if "things had gotten ugly" during a fight at city hall, "we'd be having [plaintiff's] funeral," Little v. Robinson, 72 So. 3d 1168, 1173 (Ala. 2011); a defendant abused, insulted, and threatened a plaintiff with wrongful foreclosure to collect a debt, Green Tree, 565 So. 2d at 45; and a defendant

> threatened, abused, humiliated, and terminated an employee without cause, and thereby caused the employee's weight loss and insomnia, Am. Rd. Serv. Co. v. Inmon, 394 So. 2d 361, 367 (Ala. 1980).

361 F. Supp. 3d 1213, 1224 (N.D. Ala. 2019). *See also* O'Rear v. B.H., 69 So. 3d 106, 118-19 (Ala. 2011) (judgment on outrage claim affirmed where family physician, when asked by teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for sex acts for a number of years, resulting in the boy's drug addiction.), *and* Gray Brown-Service Mortuary, Inc. v. Lloyd, 729 So. 2d 280, 285-86 (Ala. 1999) (judgment on outrage claim affirmed where evidence showed that funeral home employees opened a decedent's casket and poured a caustic chemical on her remains, and subsequently placed most of decedent's remains in a body bag that was buried in another location.).

16. With respect to Plaintiff's allegations in this case, the Alabama Supreme Court's ruling in Callens v. Jefferson Cnty. Nursing Home, 769 So. 2d 273, 281 (Ala. 2000) is directly on point.  In that case, the Court held that a nursing home's actions, which included failure to notify plaintiff of her mother's injuries and misrepresentations about the cause of said injuries, were not actionable under the tort of outrage.  Despite Plaintiff's conclusory statements about the outrageousness of Cypress's alleged conduct in her Complaint, the application of settled Alabama law makes clear that the allegations asserted in support of Plaintiff's outrage claim, even when considered in the light most favorable to Plaintiff, do not rise to the level of egregious intentional or reckless conduct required for the tort of outrage.

17. Count VII of Plaintiff's Complaint asserts an additional claim against Cypress for worker's compensation benefits. Plaintiff alleges in Paragraph 62 of the Complaint that Mr. Zirlott was working within the line and scope of his employment with Cypress when the injury at issue occurred.

18. 28 U.S.C. § 1445(c) provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Thus, Count VII of Plaintiff's Complaint for worker's compensation is not removable to this Court.

19. In Lamar v. Home Depot, 907 F. Supp. 2d 1311 (S.D. Ala. 2012), this Court addressed a situation nearly identical to the one at hand where plaintiff's complaint contained both a non-removable claim arising under Alabama's workmen's compensation laws, and Alabama common law claims that were properly removed on the basis of diversity of citizenship. The Court in Lamar held that removal of a diversity action is accomplished through 28 U.S.C. § 1441(a), and when removal is properly accomplished through § 1441(a), "the federal court is to remand the worker's compensation claim and retain the properly removed claims." 907 F. Supp. 2d at 1315 (citing Reed v. Heil Co., 206 F.3d 1055 (11th Cir. 2000)). Applying this principle, the Court must sever and remand Count VII of Plaintiff's Complaint.

20. Defendant Metals USA is a corporation organized under the laws of the state of Delaware having its principal place of business in the state of Florida. Though its citizenship is diverse from Plaintiff's, it too is a fraudulently joined defendant. Count VI of Plaintiff's Complaint asserts a claim of outrage against

Metals USA, and the discussion of Plaintiff's outrage claim in paragraphs 13-16 above applies equally to Metals USA.

## II.     The Amount in Controversy Exceeds $75,000.

21.     Nowhere in the Complaint is there a demand for a particular amount of damages. This type of "indeterminate" prayer for relief is no barrier to a diversity-based removal, as has been discussed many times by this Court, the Eleventh Circuit, and quite recently by the Supreme Court.

22.     <u>Dart Cherokee Basin Operating Co. v. Owens</u>, _____ U.S. _____ 135 S. Ct. 547 (2014), involved review of a district court remand order in a case under the Class Action Fairness Act. The majority opinion, directing reversal, addressed CAFA in part, but addressed more directly the amended language of the universal removal statute, 28 U.S.C. § 1446 and certain of its subparts. In particular, the court discussed § 1446(c)(2)(B), which states that a diversity-based removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." Focusing on that language, the Supreme Court in <u>Ownes</u> turned to the content of a removal notice and the requirements of § 1446(a). The court said:

> By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure . . . . The legislative history of § 1446(a) is corroborative. Congress, by borrowing from the familiar "short and plain statement" standard from Rule 8(a), intended to "simplify the 'pleading' requirements for removal" and to clarify that courts should "apply the same liberal rules [to removal allegations] that are applied to other matters of pleading" . . . .

> When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy, allegation is accepted if made in good faith. Similarly, when a defendant seeks federal court jurisdiction, the defendant's amount-in-controversy should be accepted when not contested by the plaintiff or questioned by the court . . . .
>
> * * * *
>
> In sum, as specified in § 1446(a) a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount if required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

Id. at 554.

23. The amount in controversy in this action, exclusive of costs and interest, exceeds $75,000.

24. There are several clear indicia in the record that the jurisdictional amount is present here. First, in Alabama practice a circuit court plaintiff has a filing fee choice break line at $50,000. See ALA. CODE § 12-19-71(a). In this case Plaintiff had a choice to file under the lower cost "less than $50,000" option, but elected the higher-cost option.

25. Secondly, this is a wrongful death action brought pursuant to ALA. CODE § 6-5-410, in which Plaintiff alleges, *inter alia*, that defendants DiscountRamps.com, HDR, and SGS, negligently and wantonly caused Mr. Zirlott's death. Based on those allegations, Plaintiff seeks punitive damages against these defendants "in an amount in excess of the minimum jurisdictional limits of this Court."

26. In <u>Roe v. Michelin North America, Inc.</u>, 613 F. 3d 1058 (11th Cir. 2010), the Court dealt with the removal of an Alabama wrongful death action in which the complaint demanded no specific damage award. Applying pre-<u>Dart Cherokee</u> authority, the Court gathered the authorities on "indeterminate demand" cases and summarized them this way:

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

<u>Id</u>. at 1062 (citations omitted).

Then, under the heading **Protecting the Right to Remove**, the court said this:

> This common-sense approach to deciding a jurisdictional challenge is especially useful in cases brought under Alabama's Wrongful Death Act, in which no compensatory damages may be recovered. Restricting recovery to only punitive damages eliminates many of the traditional means available to defendants to obtain information about the value of claims. . . .
>
> Sometimes, when a plaintiff's allegations are viewed in light of the award factors, it will be clear that the jurisdictional minimum is likely met. In such circumstances, preventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case. This rule would reward plaintiffs for employing the kinds of

> manipulative devices against which the Supreme Court has admonished us to be vigilant.
>
> For instance, a plaintiff could "defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details of the value of the claim." Plaintiffs skilled in this form of artful pleading, with this "trick," simply "make federal jurisdiction disappear." Indeed, if courts were to rely solely on plaintiff's damage statements, as Roe suggests, it is difficult to imagine a punitive damages suit that could be removed against a plaintiff's wishes. Both policy and precedent counsel against rewarding such obfuscating tactics.
>
> Thus, when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled.

Id. at 1064 (citations and footnote omitted).

27. In Nelson v. Whirlpool Corp., Judge William H. Steele addressed indeterminate demands in Alabama wrongful death cases, stating

> Far from ignoring the tragedy of life cut short in assessing damages for its demise, Alabama's wrongful death scheme elevates it to prime importance. "The very purpose of punitive damages, then, in a wrongful death context, rests upon the Divine concept that all human life is precious." "[I]t is indeed the value of life itself upon which punitive damages are premised." Thus, "[t]he legislature has authorized the jury to ascertain an amount of damages appropriate to the goal sought to be achieved-- preservation of life because of the enormity of the wrong, the uniqueness of the injury, and the finality of death." The jury is specifically expected to consider the finality of death in fixing the amount of punitive damages, and lawyers may properly make jury arguments concerning

>the value of human life (in general, not of the particular decedent).

668 F. Supp. 2d 1368, 1374. (S.D. Ala. 2009) (internal citations omitted).

28. Plaintiff's Complaint in this case alleges that DiscountRamps.com, HDR, and SGS, wantonly caused Mr. Zirlott's death. The same allegation was made in <u>Nelson</u>, where the Court held "[g]iven that Alabama law views every human life as precious and requires juries to consider the finality of its premature destruction in assessing damages, the Court concludes that it is readily deducible from the complaint that the amount in controversy exceeds $75,000." Moreover, the Court noted that "[f]ew things would defy common sense more completely than insisting that a suit for wantonly killing a human being, in which the damages are designed to vindicate "the Divine concept that all human life is precious," the plaintiff may explicitly argue "the value of life itself," and the jury is expected to consider "the finality of death" in assessing damages, does not place more than $75,000 in controversy." <u>See also</u> <u>Roe v. Michelin North America, Inc.</u>, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009) ("it is not speculative to conclude from the egregious conduct alleged that the amount, whatever it is, far exceeds $75,000. Indeed, the court cannot imagine a plaintiff's lawyer saying with a straight face that this wrongful-death case should be valued at no more than $75,000.")

29. Applying this precedent to the case at hand unquestionably leads to the conclusion that the jurisdictional amount is present.

**C.     Other Matters**

30.     Attached to this Notice as Exhibit B are copies of all process, pleadings and orders served on defendants in the Circuit Court action.

31.     Upon the filing of this notice, defendants will file a copy of it with the clerk of the circuit court, which will affect the removal.

32.     The fraudulently joined defendants, SGS, Cypress, and Metals USA, need not join in this Notice because such defendants need not consent to removal. *See* Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993); Restivo v. Bank of America Corp., 618 Fed. Appx 537, 540 n.5 (11th Cir. 2015). However, the Declaration of Kevin Kennedy and documents on behalf of Cypress and Metals attached hereto as Exhibit C, confirm that these entities consent to the removal.

Respectfully submitted, this the 6th day of May, 2019.

/s/Jarrod J. White
JARROD J. WHITE - WHITJ1010
Attorney for Defendants
DiscountRamps.com, LLC and HD Ramps, LLC

CABANISS, JOHNSTON, GARDNER,
    DUMAS & O'NEAL LLP
Post Office Box 2906
Mobile, Alabama  36652
Telephone:   (251) 415-7300
Facsimile:   (251) 415-7350
E-Mail:      jjw@cabaniss.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Desmond V. Tobias, Esq.
desi@tmclawyers.com


/s/Jarrod J. White